UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY W. GARCIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JEFF MACOMBER, et al.,<br><br>　　　　Defendants. | No. 1:25-cv-00027-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF RETALIATION CLAIM<br><br>(ECF No. 10) |

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's second amended complaint, filed July 25, 2025.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

On or around September 18, 2018, a stabbing occurred at Corcoran causing the Mexican Mafia (EME) to issue a "green light" (an order to use violence and deadly force) against STG-Bulldogs, which extended to affiliate subservient gangs such as the Surenos. Plaintiff along with eleven other inmates have been designated by CDCR or admitted to being members of the STG-Bulldogs.

On September 29, 2018, riots occurred on E and F blocks at Avenal State Prison wherein approximately 20 members of the STG-Bulldogs were attacked by dozens of STG-Surenos and their STG allies. As a result of the attack, multiple victims were sent to the hospital with life threatening injuries.

2

1    On information and belief, the Multi-Unit Gang Enforcement Consortium (M.A.G.E.C.) had communicated to Defendants that a "green light" (authorization for unprovoked attacks) had been issued by the Mexican Mafia and Surenos, whom the EME controls. Defendants were made aware of this information.

On November 30, 2022, Plaintiff along with eleven other STG-Bulldog classified inmates were transferred against their will to SATF-Corcoran. Upon arrival, Plaintiff was processed through Receiving and Release as is policy and procedure and was cleared to go to B-yard. When Plaintiff requested his property, staff stated that he would not need it where they were going (as if staff were aware of what was to come).

Plaintiff along with the other STG-Bulldog inmates were then escorted to B-yard by John/Jane Does 1-5, where they were left to be assaulted, stabbed, and possibly murdered by the dozens of rival STG-Southern/Northern classified inmates who were waiting for Plaintiff on the yard. It was obvious Defendants were all aware of what would happen if and when Plaintiff and the STG-Bulldog inmates entered B-yard with dozens of rival gang members. After numerous documented attacks, several direct warnings via letter, direct statements to ICC, and pending lawsuits addressing injuries incurred in almost identical attacks across multiple CDCR prisons, including, Ironwood, Pelican Bay, Avenal, Soledad, Pleasant Valley, and California City. After having been set up only a few months before at SCC to encounter rival STG inmates and his clear statement that he was an STG-Bulldog classified inmate and would continue to fight and defend himself if rehoused on a Non-Designated Program Facility (NDPF). Plaintiff was transferred to SATF-Corcoran in retaliation for failing to program on a NDPF with known and well documented rival gang members.

Defendants all had prior notice of the direct and credible threat of physical violence toward Plaintiff because regular and systematic attacks had occurred throughout the CDCR system since 2018, media reports and CDCR press releases addressed these attacks. Plaintiff, himself, expressed a fear of imminent attack and SATF administration had been directly contacted regarding the threat. Nonetheless, Defendants forced Plaintiff to enter the yard and a riot occurred.

3

There had been multiple riots similar to the one on November 30, 2022 in question, all of which Defendants were aware of and knew would occur if Plaintiff was placed on the yard.

Secretary Macomber and Director Broomfield possessed direct knowledge of documented, extreme risks, personally failed to take reasonable steps to mitigate the dangers. Despite their clear knowledge, Defendants Macomber and Broomfield personally acted with deliberate indifference by failing to implement adequate protective measures or alternative housing solutions, or by maintaining a policy that they knew would lead to severe harm.

Defendant John Doe 1 (SATF Warden) and John Doe 2 (Captain) acted with deliberate indifference to a substantial risk of serious harm by personally overseeing, approving, and allowing the intake of Plaintiff and the 11 STG-Bulldog inmates and their subsequent clearance to B-yard which resulted in injuries to Plaintiff after being stabbed multiple times. These Defendants were well aware of the ongoing violence across the State and "green light" issued by the Mexican Mafia against all STG-Bulldogs, yet they allowed the integration and assault to take place at their institution.

Defendant John Doe 3 (Lieutenant) acted with deliberate indifference to a substantial risk of harm to Plaintiff by personally reviewing and clearing Plaintiff to go to B-yard and failing to remedy the unconstitutional NDPF housing policy that systematically commingled rival STGs.

Defendant John Does 4 through 7 acted with deliberate indifference to a substantial risk of serious harm to Plaintiff when they escorted Plaintiff to the B-yard sally port door, and had John Doe 8 open the door and ordered Plaintiff to enter the yard. All John Doe Defendants clearly understood what was about to transpire because of their prior knowledge of the "green light" and the fact that their institution radios had alerted/informed them that several groups of STG-Southern and STG-Northern inmates were congregating in menacing ways on B-yard awaiting the entry to the yard by Plaintiff and the 11 other STG-Bulldog inmates.

Defendant John Doe 8 acted with deliberate indifference to a substantial risk of serious harm to Plaintiff when he opened the sally port door to B-yard and ordered Plaintiff to enter the yard and closed the door. Defendant John Doe 8 knew of the impending violence that would ensure after having observed and communicated via the institutional radio.

**III.**

**DISCUSSION**

**A.   Deliberate Indifference to Safety**

"[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation marks and citations omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.' " Id. at 834 (citations omitted). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. Rish v. Johnson, 131 F.3d 1092, 1096 (9th Cir. 1997). Speculative fear of harm at the hands of other prisoners does not constitute a sufficiently substantial risk of harm to future health and safety. See, e.g., Williams v. Wood, 223 Fed. Appx. 670, 671 (9th Cir. 2007) (citing Farmer, 511 U.S. at 842). Second, " 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind,' " "one of 'deliberate indifference' to inmate health or safety." Id. (citations omitted).

Here, at the pleading stage, Plaintiff's allegations that Defendants had prior knowledge of the substantial risk of serious harm by approving and ordering Plaintiff (a STG-Bulldog) to enter the B-yard of the NDHP facility at SATF-Corcoran which housed rival gang members, are sufficient to give rise to a plausible claim of deliberate indifference against Defendants Jeff Macomber, Ron Broomfield, and John/Jane Does 1 through 8.

**B.   Retaliation**

The First Amendment protects prisoners' rights to file prison grievances. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). As such, any action taken in retaliation for filing a prison grievance violates inmates' constitutional rights. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). There are five elements to a First Amendment claim in the prison context: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that

5

prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id. at 567–68.

To satisfy the causation element, Plaintiff must show that his constitutionally protected conduct was a " 'substantial' or 'motivating' factor" for the alleged retaliatory action. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d at 1310, 1314 (9th Cir. 1989)). "[P]laintiff must show that the defendant's retaliatory animus was 'a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.' " Capp v. Cnty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019) (as amended) (citation omitted). An action colored by some degree of bad motive does not amount to a constitutional violation if that action would have been taken anyway. See Crawford-El v. Britton, 523 U.S. 574, 593 (1998); Hartman v. Moore, 547 U.S. 250, 260 (2005) (holding that if retaliation is not the but-for cause, "the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind."). Retaliation is not established simply by showing adverse activity by a defendant after protected conduct; rather, a plaintiff must show a nexus between the two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000). However, "timing can properly be considered as circumstantial evidence of retaliatory intent." Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (quoting Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)).

Here, Plaintiff alleges that Defendants set him up "to be beaten, stabbed, and possibly murdered by known, well documented rival STG classified inmates in retaliation for exercising the grievance process/court access due to previous and current litigation by Plaintiff and other STG classified inmates against CDCR and its agents." (ECF No. 10 at 2.) Plaintiff further alleges he was transferred to SATF-Corcoran in retaliation for failing to program on a NDPF with known and well documented rival gang members. Plaintiff fails to state a cognizable retaliation claim. There are no facts from which it can be inferred that Plaintiff filed grievances/lawsuits, or that any Defendant was aware of any protected conduct, such that it was the but-for cause of Plaintiff being housed at SATF-Corcoran NDPF facility B-yard. Simply stating that Defendants

1 retaliated against him or acted in retaliation is not sufficient to state a claim for relief. Further, a
2 refusal to program or follow prison official's orders with regard to housing is not "protected
3 conduct" under the First Amendment. Thus, Plaintiff fails to state a cognizable retaliation claim.
4 Despite being provided with the relevant legal standard applicable to his claims, Plaintiff has been
5 unable to state a claim and further leave to amend is not warranted. Lopez v. Smith, 203 F.3d
6 1122, 1130 (9th Cir. 2000). Accordingly, Plaintiff's retaliation claim should be dismissed
7 without further leave to amend.

## IV.

## ORDER AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's deliberate indifference claim against Defendants Jeff Macomber, Ron Broomfield, and John/Jane Does 1 through 8; and

2. Plaintiff's retaliation claim be dismissed for failure to state a cognizable claim for relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court, limited to 15 pages in length, including exhibits. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights

///
///
///
///
///
///

on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:  **August 28, 2025**

STANLEY A. BOONE
United States Magistrate Judge